**KIERNAN TREBACH LLP**
BY: SARAH M. BAKER, ESQUIRE
IDENTIFICATION NO: 206536
TEN PENN CENTER, SUITE 770
1801 MARKET STREET
PHILADELPHIA, PA 19103
(215) 569-4433
sbaker@kiernantrebach.com

***Attorneys for Defendant, ULTA Salon, Cosmetics & Fragrance, Inc. (improperly identified as ULTA Beauty, Inc. and ULTA Beauty)***

| | |
|---|---|
| DIANNE COCHRAN<br>　　　　　　　　　　　　　Plaintiff<br><br>　　　　v.<br><br>ULTA BEAUTY, INC.; ULTA BEAUTY<br>　　　　　　　　　　　　　Defendants | UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF PENNSYLVANIA<br><br>Civil Action No.<br>2:20-cv-04997-AB |

### PRETRIAL MEMORANDUM OF DEFENDANT, ULTA SALON, COSMETICS & FRAGRANCE, INC. (IMPROPERLY IDENTIFIED AS ULTA BEAUTY, INC. AND ULTA BEAUTY)

Defendant, ULTA Salon, Cosmetics & Fragrance, Inc. (improperly identified as ULTA Beauty, Inc., and ULTA Beauty) [hereinafter "ULTA"], by and through its attorneys, KIERNAN TREBACH LLP, hereby submits the following Pretrial Memorandum:

**I.　　BRIEF STATEMENT OF FACTS**

This matter arises out of an alleged incident that occurred at the ULTA store in Collegeville, Pennsylvania, on May 6, 2018.  Plaintiff alleges that she was working as a merchandiser at the time of the alleged incident, requiring her to travel to the ULTA store in Collegeville, to work on the Essie brand nail polish displays in the store.  Plaintiff claims that she arrived at the store on the day in question to restock the display of Essie brand nail polishes. After working on the display for approximately an hour and a half, Plaintiff proceeded to work

on the "endcap" portion of the display. Plaintiff alleges that she took one bottle of nail polish off the endcap display and the entire endcap display unit fell forward onto her, causing injuries.

This case was subject to mandatory arbitration, which took place on February 21, 2023. Plaintiff and Erica Harrell testified at the arbitration, which resulted in a defense award. Plaintiff thereafter appealed.

## II. RELEVANT FACTUAL DISPUTES

ULTA disputes that the accident took place, let alone took place as Plaintiff asserts. Further, even if the incident occurred as Plaintiff alleges, Defendant disputes that it breached any duty owed to Plaintiff as there is no evidence that Defendant created or otherwise had notice of the alleged hazardous condition.

Plaintiff's claims relate to the display of the gel nail polishes, which were on a type of display called an "endcap." An endcap is a display at the end of an aisle, usually sitting perpendicular to the display in the aisle. See below:



The top of the display in question, containing a bracket, fits over the top of the abutting display, hanging in place.  A picture below demonstrates how the display hangs:



The display in question does not touch the floor. Plaintiff, however, contends that on the day of the incident, the Essie brand gel nail polish display was not hanging, but rather sitting flat on the floor of the store in the endcap position. She contends that when she removed one nail polish from the display, the display fell forward, making contact with her, and causing her to fall.

Plaintiff contends that she thereafter moved the display, which she estimates weighs 75 pounds, to a different area of the store. Defendant disputes Plaintiff's version of events, primarily through the testimony of Erica Harrell (hereinafter "Ms. Harrell"), the manager on duty

at the time of the incident. When Ms. Harrell was alerted by Plaintiff that an incident had occurred, she went to the sales floor, and found the Essie gel polish display hanging in its normal position on the endcap. There was no evidence that an incident had occurred.

Plaintiff contends that she took three photographs in the store on the day of the incident, but those photographs have never been produced. Instead, Ms. Harrell testified she took photographs of the display hanging in its normal position. Additionally, Defendant intends to use other photographs exchanged in discovery of this matter to demonstrate the shortcomings of Plaintiff's case.

Even if Plaintiff's version of events is to be believed, Plaintiff cannot present any evidence that ULTA created or otherwise had notice of the alleged defective condition, and thus cannot establish that ULTA breached its duty to Plaintiff. In her deposition, Plaintiff testified as follows:

```
10   Q.    Is it your testimony that the essie Gel
11   Couture endcap was not on its bracket before your
12   accident?
13   A.    Yes.  I realized after it fell on me is when
14   I know realized that the bracket was not attached to
15   the gondola.
16   Q.    All right.  How long before your accident had
17   it been off of that bracket?
18   A.    How long before my accident had it been off
19   of that bracket?
20   Q.    Do you know?
21   A.    I couldn't tell you if it was placed that way
22   or not.  Yeah.  I don't know.
23   Q.    Okay.  Well, had you ever noticed it on any
24   of your prior trips being off of the bracket or
25   somehow improperly positioned?
```

```
1   A.      No.  But it wasn't something that I'd be
2   looking for if I wasn't there for that, so...
3   Q.      Okay.  Do you know whether any of the Ulta
4   employees knew that it was off of the bracket before
5   your accident?
6   A.      I don't know.
7   Q.      Do you know how it came to be off of the
8   bracket before your accident that day?
9   A.      I don't know.
10  Q.      Okay.
```

Deposition of Plaintiff, Page 112, Line 10 through Page 113, Line 10.  Thus, Plaintiff testified that she did not know how long the display was off the endcap, how it came to be off the endcap, whether it had been moved by someone, or whether any ULTA employees knew that the endcap was off the bracket.  Further, Plaintiff herself did not notice anything unusual about the way the endcap looked while working on the in line or at any point before the accident.  As such, Plaintiff is unable to sustain her burden of proof, which requires her to demonstrate either actual or constructive notice of the condition at issue.

In addition to these factual disputes, the defense position on damages is discussed in the "Damages" section of this Memorandum below.

### III.  DAMAGES

Plaintiff alleges the following injuries as a result of the alleged incident: concussion, post-traumatic headaches, post-concussion syndrome, brain aneurysm, brain hemorrhage, cervical radiculopathy, lumbar radiculopathy, cervicalgia, peripheral tear of the medial meniscus of the left knee requiring surgery and other injuries.  Plaintiff was evaluated by her injuries by

Barry Rovner, M.D. (neuropsychiatry) and Menachem Meller, M.D. (orthopedic surgery) at Defendant's request.  The opinions of each are discussed below.

    A.    *The Opinions of Dr. Rovner*

Dr. Rovner examined Plaintiff in December 2022. Ms. Cochran's cognition was intact at the time of the examination, with normal attention, concentration, memory, numeracy, processing speed, language, visuospatial abilities, and executive functions. When Ms. Cochran was seen in the emergency room the day after the incident, she did not report a head injury. Ms. Cochran's medical records do not provide objective evidence of cognitive impairment. When examined by Dr. Rovner, Ms. Cochran attributed her subjective cognitive complaints to a neck injury, and never mentioned hitting her head during the subject incident.

Furthermore, the records from the first medical treatment following the alleged incident are devoid of evidence of concussion related eye movement abnormalities, which would have been present at the time of injury, and not appeared later. Additionally, Ms. Cochran's cognitive complaints have worsened over time, which is inconsistent with the clinical characteristics of a concussion. Rather, they are suggestive that psychological mechanisms explain her symptoms.

Rather than having a cognitive disorder attributable to the incident in question, Dr. Rovner opines that Ms. Cochran has Somatic Symptom Disorder, which explains why, even in the context of treatment, an individual remains highly symptomatic.

    B.    *The Opinions of Dr. Meller*

Dr. Meller opines that Ms. Cochran has dramatic fluctuations of pain involving her head, neck, back, left hip, both hands, and both feet, in the presence of behavioral confounders and inappropriate illness behavior. He is unable to substantiate that any orthopedic injury occurred as a result of the alleged subject incident, and points to her extensive history of other injuries and

age-related changes, as well as opioid induced hyperalgesia (sensitivity to pain) as explanations for her symptoms.

## IV. WITNESS LIST

<u>Liability Witnesses</u>
1. Erica Harrell
2. Barry Rovner, M.D.
3. Menachem Meller, M.D.

<u>Damages Witnesses</u>
1. Barry Rovner, M.D.
2. Menachem Meller, M.D.
3. Medical providers listed in Plaintiff's medical records
4. Custodian of Records of Grand View Health Work Place – Health & Wellness Dept.
5. Custodian of Records of Grand View Hospital – ER
6. Custodian of Records of Good Shepherd Physicians Group
7. Custodian of Records of Good Shepherd Physicians Group – Spine & Joint Center
8. Custodian of Records of Good Shepherd Physicians Group – Vision Center
9. Custodian of Records of Good Shephard Rehab
10. Custodian of Records of Lehigh Valley Hospital
11. Custodian of Records of Lehigh Valley Health Network – Head Trauma & Concussion Program
12. Custodian of Records of Lehigh Valley Physician Group – Family Medicine
13. Custodian of Records of Lehigh Valley Hospital – Imaging
14. Custodian of Records of Performance Spine & Sports Physicians
15. Custodian of Records of Princeton Brain & Spine
16. Custodian of Records of Princeton Brain & Spine – Allentown
17. Custodian of Records of St. Luke's University Health Network
18. Custodian of Records of St. Luke's Orthopaedic Specialists
19. Custodian of Records of St. Luke's Quakertown Bone & Joint
20. Custodian of Records of OAA Orthopaedic Specialists
21. Custodian of Records of Grand View Health – Radiology
22. Custodian of Records of Grand View Health
23. Custodian of Records of Bureau of Workers' Compensation
24. Custodian of Records of Twin City Fire Insurance Co.
25. Custodian of Records of Grace Acupuncture
26. Custodian of Records of Center for Interventional Pain & Spine
27. Custodian of Records of Donna's Medical/Therapeutic Massage
28. Custodian of records for Plaintiff's medical records

Defendants reserve the right to supplement this list, up to and including the time of trial.

Defendants reserve the right to call any witness identified by plaintiff in her Memorandum.

V. **EXHIBIT LIST**

1. Expert Report of Barry Rovner, M.D
2. CV of Barry Rovner, M.D
3. Expert Report of Menachem Meller, M.D.
4. CV of Menachem Meller, M.D.
5. Deposition transcript of Dianne Cochran, including exhibits
6. Deposition transcript of Erica Harrell, including exhibits
7. Report prepared by Dianne Cochran 5-6-18
8. ULTA Incident Report 5-6-18
9. Plaintiff's Complaint
10. Plaintiff Answers to Defendant Interrogatories and Document Requests, including documents produced
11. Defendant Answers to Plaintiff Interrogatories and Document Requests, including documents produced
12. Photographs produced by Plaintiff
13. Photographs produced by Defendant
14. Records of Grand View Health Work Place – Health & Wellness Dept.
15. Records of Grand View Hospital – ER
16. Records of Good Shepherd Physicians Group
17. Records of Good Shepherd Physicians Group – Spine & Joint Center
18. Records of Good Shepherd Physicians Group – Vision Center
19. Records of Good Shephard Rehab
20. Records of Lehigh Valley Hospital
21. Records of Lehigh Valley Health Network – Head Trauma & Concussion Program
22. Records of Lehigh Valley Physician Group – Family Medicine
23. Records of Lehigh Valley Hospital – Imaging
24. Records of Performance Spine & Sports Physicians
25. Records of Princeton Brain & Spine
26. Records of Princeton Brain & Spine – Allentown
27. Records of St. Luke's University Health Network
28. Records of St. Luke's Orthopaedic Specialists
29. Records of St. Luke's Quakertown Bone & Joint
30. Records of OAA Orthopaedic Specialists
31. Records of Grand View Health – Radiology
32. Records of Grand View Health
33. Records of Bureau of Workers' Compensation
34. Records of Twin City Fire Insurance Co.
35. Records of Grace Acupuncture
36. Records of Center for Interventional Pain & Spine
37. Records of Donna's Medical/Therapeutic Massage
38. IME Reports of Robert Mauthe, M.D.
39. IME Reports of I. Howard Levin, M.D.
40. Impairment Rating Evaluation of Michael Fischer, D.O.

41. Anatomic drawings/Netter or Netter like illustrations
42. Blowups of any exhibits

Defendants assert that impeachment material need not be disclosed.

Defendants reserve the right to update this list up to and including the time of trial.

Defendants reserve the right to utilize any exhibits identified by Plaintiff her Pretrial Memorandum.

## VI. OBJECTIONS TO PROPOSED WITNESSES

As of the date of filing this Memorandum, Defendant had not received Plaintiff's proposed list of witnesses. Defendant therefore reserves the right to object to object to the same, once received.

## VII. OBJECTIONS TO PROPOSED EXHIBITS

As of the date of filing this Memorandum, Defendant had not received Plaintiff's proposed list of exhibits. Defendant therefore reserves the right to object to object to the same, once received.

## VIII. OBJECTIONS TO PROPOSED VIDEOTAPED TESTIMONY

As of the date of filing this Memorandum, Defendant has not received indication of Plaintiff's intent to use videotaped testimony at trial. Defendant therefore reserves the right to object to object to the same, once taken, if any.

## IX. OBJECTIONS TO PROPOSED DEPOSITIONS TO BE READ AT TRIAL

As of the date of filing this Memorandum, Defendant had not received Plaintiff's proposed depositions to be read at trial. Defendant therefore reserves the right to object to object to the same, once received.

## X. TRIAL LENGTH/ESTIMATE

4-5 days.

## XI. SPECIAL COMMENTS

None at this time.

          Respectfully submitted,
          KIERNAN TREBACH LLP

By: _/s/ Sarah M. Baker_____
    SARAH M. BAKER, ESQUIRE
    *Attorneys for Defendant, ULTA Salon, Cosmetics & Fragrance, Inc. (improperly identified as ULTA Beauty, Inc. and ULTA Beauty)*

Dated: May 6, 2024